UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY MAZZA ) | |
| ) | |
| v. ) | Case 1:24-cv-10333-NMG |
| ) | |
| CITY OF BOSTON, et alia ) | |
| ) | |

PLAINTIFF'S OPPOSITION TO DEFENDANT CITY OF BOSTON'S
MOTION TO DISMISS THE COMPLAINT

Plaintiff, Anthony Mazza, opposes the Defendant City of Boston's Motion to Dismiss the Complaint ("Motion"). As set forth in more detail below, the Complaint properly pleads each of the counts alleged against the City of Boston ("the City"),[1] and the Motion must be denied.

**I.    BACKGROUND**

The facts set out herein are taken from the Complaint, which must be treated as true in deciding a Motion to Dismiss. *Cheng v. Neumann*, 51 F.4th 438, 443 (1st Cir. 2022) ("[w]e accept as true the complaint's well-pleaded factual allegations and draw all reasonable inference in favor of the non-moving party" (*internal quotations omitted*)).[2]

This is an action brought against the City, and against police officers employed by the City at the time of the relevant incidents herein, for violation of Mr. Mazza's rights by purposefully hiding evidence and knowingly allowing perjury in order to secure his conviction on charges of murder and robbery. Complaint, ¶1. The individual defendants, acting under color of law, were investigating officers and/or supervisory officers. Complaint, ¶¶ 8, 16. Since the Motion seeks only to dismiss the claims against the City, not the individual defendants, this Opposition

---

[1] The Motion does not seek to dismiss the claims against any of the named police officer defendants.
[2] Citations to the Complaint are by paragraph, as numbered therein.

therefore does not differentiate the actions of the individual defendants. The unconstitutional actions of the individual defendants are set out in detail in the Complaint.

On or about July 1, 1972, Peter Armata ("the victim") was robbed and murdered in the apartment of Robert Anderson ("Robert") at 384 Bowdoin Street in Dorchester, a neighborhood of Boston. On July 5, 1972, Robert was arrested and charged with first-degree murder and robbery. Complaint, ¶¶12-13.

During the course of the Boston Police Department ("BPD") investigation, the evidence was clear that Robert was the most likely killer. The defendants were aware that Robert was a violent criminal with many arrests and a history of prior convictions, including convictions for robbery and assault and battery. They knew he had confessed twice to the Armata murder, describing the way he strangled the victim to one witness and telling another witness who asked him why there was a body in his apartment "I don't know. I guess I hit him too hard." They knew he was driving the victim's stolen car after the murder, and on July 4, 1972, when they located the car, Robert deliberately avoided police officers in an attempt to evade arrest. On another occasion, he jumped from the second story rear window of his apartment to avoid police officers at the front door. The victim's body, bound and stuffed into a kitchen closet, stayed in Robert's apartment, where he lived alone, for days after the murder. Robert asked multiple people for assistance in trying to dispose of the body. Mr. Mazza's roommates provided him with an alibi during the time the crime was committed. Complaint, ¶28(a)-(o).

Nonetheless, after his arrest, Robert gave statements to multiple individual BPD defendants, seeking to exculpate himself and place the blame for the crimes on Mr. Mazza. Complaint, ¶¶14-15. Robert's statements were contradicted in multiple material and relevant ways by the taped statement the BPD defendants secured from his brother, William Anderson ("William") on July 10, 1972, which pointed to Robert as the actual killer, not Mr. Mazza. Complaint, ¶¶16-17. William's statement included, *inter alia*:

2

- the fact that Robert alone asked William to help dispose of the body, contradicting Robert's allegation that Mr. Mazza was also present;
- the fact that Robert told William he was going to dump the body in the river, which Robert never told anyone else and did not so testify;
- the fact that Robert alone gave the victim's ring to William as a birthday gift with no mention of it coming from Mr. Mazza, in contradiction to Robert's allegation that the ring was given to William in Mr. Mazza's presence and with a statement that it was "from" Mr. Mazza; and
- the fact that Robert told William he had sold the victim's watch.

Complaint, ¶¶16, 28. There was no forensic evidence against Mr. Mazza. In fact, Robert's testimony was the only direct evidence against Mr. Mazza, and without Robert's testimony, there was no case against Mr. Mazza. Complaint, ¶¶21,24,26.

The defendants, knowing William's statement inculpated Robert and was exculpatory of Mr. Mazza, deliberately concealed the statement, failing to provide it to the District Attorney's office or to defense counsel. Complaint, ¶¶17-19, 23. None of the facts in the withheld statement, unknown to defense counsel, were mentioned by William in his testimony at trial. Multiple individual BPD defendants herein, who were aware of these facts from William's withheld statement, were present for the trial and did not bring these facts to light. Complaint, ¶¶29-30.

The Complaint makes clear that the individual BPD defendants' concealment of exculpatory evidence and failure to correct Robert's perjured testimony followed the policies and the pattern, policy and practice of the BPD and the defendant City of Boston in 1972. Complaint, ¶¶30,33,39-40,57-67,82,89,95,103-111.

The defendants' decision to charge Mr. Mazza rather than Robert for the crime was based on their determination that Mr. Mazza was a "queer." They arrested Mr. Mazza on July 6, 1972 and charged him with murder and robbery of the victim. They developed, and presented at trial, evidence that Mr. Mazza shared a mattress with one of his roommates, a "queer" man who sometimes dressed in

women's clothes. They presented evidence to the jury that Mr. Mazza had gone to a bar that was known as "a queer place" the night before the murder. They presented this evidence at trial to prejudice the jury against Mr. Mazza and maliciously and irrelevantly attack his alibi witnesses. Complaint, ¶¶22-23. *See also Commonwealth v. Mazza*, 484 Mass. 539, 544 n.11 (2020).

Mr. Mazza was wrongly convicted of murder in May 1973. He maintained his innocence throughout the trial and to this day. Complaint, ¶¶7,21,24-27. The defendants' malicious failure to pursue the real killer, Robert, and to continue concealing William's exculpatory statement, continued for at least another three decades. In 1978, Mr. Mazza produced affidavits from four witnesses stating that Robert had confessed to each of them separately in jail that he deliberately framed Mr. Mazza for the crime. Defendants did nothing to further investigate or revisit the case based on these confessions. Complaint, ¶¶31-32. In the mid-1990s, Mr. Mazza learned that he should have been provided with all the witness statements. He undertook a nearly ten year legal battle with the defendants, including the City, to avoid producing William's statement. He did not receive William's withheld statement until 2005. Complaint, ¶33.

Subsequent to receiving William's statement, Mr. Mazza sought relief from the Massachusetts state courts. His conviction was overturned by the Supreme Judicial Court 48 years after his initial wrongful arrest. Complaint, ¶¶2,7,25,79,102; *Mazza*, 484 Mass. at 551. On March 2, 2021, the prosecution dismissed the charges against Mr. Mazza, and on September 29, 2023, the Suffolk Superior Court entered an order expunging the convictions in this case. Complaint, ¶¶34-36,101.

## II.    THE CITY'S PURPORTED 12(b)(1) ARGUMENT IS FRIVOLOUS

The Motion seeks a dismissal based on lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1). The counts herein are all claims under 42 U.S.C. § 1983. This Court has jurisdiction over § 1983 claims pursuant to 28 U.S.C. §§ 1331 and 1343, as properly set forth in the Complaint, and neither the Motion

4

nor the Defendant City of Boston's Memorandum of Law in Support of Its Motion to Dismiss the Complaint ("Memorandum") argues otherwise.

Rather, the Memorandum irrelevantly argues that Mr. Mazza "lacks standing" to bring a claim for indemnification against the City. Yet, no such claim is presented herein, as the Memorandum itself concedes. Memorandum, n.4. To the extent the Complaint contains language placing responsibility upon the City for the actions of the individual defendants other than based on their following of City established policy and practice or their actions due to the City's failure to provide proper training, it is legal surplusage not required for the actual counts at bar, and should be ignored in deciding the Motion. *See Corte-Real v. United States*, 949 D.2d 484, 487-488 (1st Cir. 1991) (disregarding surplusage in reversing a grant of summary judgment).

This Court cannot dismiss claims that are not before it, and in this case are not ripe to be presented.[3] If a judgment is secured against the individual defendants but not against the City, the issue of whether the City is required to indemnify the individual defendants, either pursuant to statute or based on the City's employment contracts with its police officers and their union, may arise. The Motion seeks, in effect, to secure a declaratory judgment in the guise of a motion to dismiss. This is improper, does not constitute an appropriate pleading consistent with 28 U.S.C. § 2201, and must be denied.

### III. PLAINTIFF PROPERLY PLEADS THE ELEMENTS OF EACH OF HIS CLAIMS AGAINST THE CITY, AND THE CITY'S 12(b)(6) MOTION MUST BE DENIED

---

[3] Although Mr. Mazza has sought to have the City accept service for the individual defendants, that does not constitute a claim against the City. While plaintiff will seek to have the City served as the real party in interest for the deceased individual defendants, per M.G.L. c. 190B, §3-803(d)(2), that motion is not yet filed. In any event, the question of whether Mr. Mazza can recover funds from the City if the claims against the individual defendants succeed is not yet before the Court, and irrelevant to whether the unconstitutional actions of the City have been adequately pled. As such it is at most surplusage and should be ignored in deciding the Motion. *Corte-Real*, 949 D.2d at 487-488 (1st Cir. 1991).

The standard for deciding a Rule 12(b)(6) motion is set out in *Haley v. City of Boston,* 657 F.3d 39 (1st Cir. 2011). In reviewing a 12(b)(6) motion, the court must:

> accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor. [The court] may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice.
>
> A complaint need contain only a short and plain statement of the claim showing that the pleader is entitled to relief. Although detailed factual allegations are not necessary, the complaint must contain sufficient factual matter [] to state a claim to relief that is plausible on its face. The complaint must include factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal.

*Id.*, at 46, internal quotations and citations omitted. Based on that standard, the First Circuit reversed a district court decision dismissing Haley's § 1983 claims against the City based on the BPD's policy of nondisclosure of exculpatory evidence in 1971 and 1972, *the same time period* during which the BPD and the City of Boston also violated Mr. Mazza's rights *in the same manner*. The complaint upheld in *Haley* is directly analogous to the Complaint herein which is the subject of the motion to dismiss.[4]

The facts in *Haley* are also directly analogous to the facts outlined in the Complaint herein. Haley was arrested in July of 1971 and charged with the first-degree murder of David Myers. *Id.* at 44. As with Mr. Mazza, there was no physical evidence against Haley. The prosecution relied on the testimony of two witnesses, sisters, one of whom was Haley's estranged wife, Brenda, and the other of whom, Gloria, lived with Myers. *Id.* In their initial statements to the police, taken the day of the murder, both sisters said they had not seen Haley for nearly a month. *Id.* Brenda had been out of state for most of that time. *Id.* As in Mr.

---

[4] A copy of the *Haley* Complaint is attached hereto as Exhibit A.

Mazza's case, those statements were withheld by the BPD, and not produced to the defense, despite a court order for all evidence favorable to the defense, including impeachment evidence. *Id.*

At trial, contrary to their initial statements, both sisters testified they had seen Haley the day before the murder. *Id.* The prosecution used that testimony to argue that Haley had seen Brenda at the same time, realized she had returned to Boston, and broken into Gloria's apartment to see if Brenda was there, leading to the confrontation with Myers. *Id.* Haley maintained his innocence, stated that he had never seen Brenda on the day before the murder, and had no reason to go to Gloria's apartment on the day of the murder. *Id.*, at 44-45. He presented his sister as an alibi witness. *Id.* at 45. Haley was convicted, and spent over 30 years in custody maintaining his innocence. *Id.* As in Mr. Mazza's case, in 2005, he filed a public records request which produced copies of the statements. *Id.* His conviction was vacated, and the charges were eventually dismissed. *Id.* In his § 1983 case against the City, as in Mr. Mazza's case at bar, Haley alleged that the withholding of the statements was part and parcel of a BPD standing policy, and that the City failed to train the officers properly. *Id.* at 51.

Based on those facts, the First Circuit held that:

> At this stage of the proceedings, we must take the complaint's factual allegations as true, and those allegations paint an ugly but plausible picture. If proven, that picture will support a finding of municipal liability. …
>
> Disclosure abuses are a recurring problem in criminal cases, and the BPD's failure to disclose the sisters' statements is wholly unexplained. Given the volume of cases involving nondisclosure of exculpatory information and the instant failure to disclose statements that clearly would have undermined the prosecution's theory of the case, we think that the municipal liability claims pleaded by Haley step past the line of possibility into the realm of plausibility. Indeed, if the detectives intentionally suppressed the discoverable statements even when such activity was condemned by the courts (as Haley has alleged), it seems entirely plausible that their conduct was encouraged, or at least tolerated, by the BPD. … Haley's allegations contain sufficient factual

> content to survive a motion to dismiss and open a window for pretrial discovery.

*Id.* at 52-53 (internal quotations and citations omitted). In the subsequent pretrial discovery in this Court, Haley developed testimony establishing the unconstitutional policies and practices of the City from former BPD Commissioner Robert DiGrazia, DiGrazia's Director of Training and Education, Robert Wasserman, and former ADA Thomas E. Dwyer, Jr.[5] DiGrazia testified that when he arrived at the BPD in November, 1972, the operating procedures were archaic and mired in corruption, and that there was no policy or practice in the BPD in 1971 or 1972 requiring the disclosure of exculpatory and/or impeachment evidence. Officers were not trained to turn over such evidence. Haley v. City of Boston, *et al.*, Civil Action No. 09-10197-RGS, Docket Entry #138, Memorandum and Order on Defendant's Motion for Summary Judgment, dated September 12, 2013, 2013 WL 4936840, *5.

Although *Haley* is on all fours factually and legally with the case at bar, and the City, as the defendant therein, must be aware of the decision, the Motion and Memorandum make no reference to it and no attempt to distinguish it, which brings the good faith of the City into question. This otherwise mystifying omission is easily understood with the realization that there are no grounds to distinguish *Haley* from the case at bar. Ignoring it is the best that the City could do. *Haley* by itself precludes a dismissal herein.

Indeed, Mr. Mazza's claims against the City are stronger than the ones presented in *Haley*. The Complaint asserts that the constitutional violations herein did not stop at the time of trial – rather, the defendants engaged in an ongoing attempt to conceal William's statement, ignore the new witness statements that

---

[5] The City presumably still has this discovery, and Mr. Mazza has secured a copy of it. It can be made available to the Court if the Court deems that necessary. By way of example, a copy of Mr. DiGrazia's declaration filed in *Haley* is attached as Exhibit B.

8

Robert confessed to perjury herein, and prevent the truth of Mr. Mazza's innocence from being revealed. The BPD and the City were direct, active participants in that ongoing conspiracy, resisting production of William's statement pursuant to Mr. Mazza's FOIA request for nearly a decade.[6] *See Mazza*, 484 Mass. at 547. The City can be held liable for its direct actions even in the absence of a pattern, practice and policy in the police department. *Haley*, 657 F.3d at 51 ("a municipality may be liable under section 1983 if the governmental body itself subjects a person to deprivation of rights or causes a person to be subjected to such deprivation" *internal quotations and citations omitted*). The Memorandum provides no argument that the City cannot be held liable on this basis, focusing only on its responsibility for policies, practices and procedures regulating the individual BPD defendants. Accordingly, the Motion must be denied for this reason as well.

## IV.   CONCLUSION

For all the foregoing reasons, the Motion must be denied, and Mr. Mazza should be allowed commence discovery to press his claims against the City, as well as against the individual defendants.

ANTHONY MAZZA,
By his attorneys

_____
John H. Cunha, Jr.
cunha@cunhaholcomb.com
BBO No. 108580
Helen Holcomb
holcomb@cunhaholcomb.com
B.B.O. No. 547538
CUNHA & HOLCOMB, P.C.
I State Street, Suite 500
Boston, MA 02109-3507
(617) 523-4300

---

[6] Although the First Circuit's opinion in *Haley* does not make clear exactly how quickly the sisters' statements were produced in response to Haley's FOIA request, it states the request was made in 2005, and that the case against him was dismissed in 2008. *Haley*, 657 F.3d at 45. Haley's Complaint, attached as Exhibit A, states they were produced in February 2006.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

_____
John H. Cunha, Jr.

Dated: April 26, 2024