## United States District Court
## District of Massachusetts

|  |  |
|---|---|
| Anthony MAZZA | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. |
|  | ) 24-10333-NMG |
| CITY OF BOSTON et al. | ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

GORTON, J.

This action arises out of a purported wrongful conviction for murder.  Pending before the Court are 1) a motion of defendant, the City of Boston ("the City"), to dismiss the complaint; 2) a motion of plaintiff, Anthony Mazza ("plaintiff"), to compel the City to accept service on behalf of deceased officers and detectives of the Boston Police Department ("BPD"), Edward Kennealy, James Malamphy, Jerome McCallum, John Murray, Frank Olbrys, John Spencer, Edward Sherry, and George Whitley (collectively, "the officers"); and 3) a motion of plaintiff to extend the time for service of process.

For the reasons that follow, the motion to dismiss will be allowed, in part, and denied, in part; and the motions to serve and to extend time for service will be denied.

- 1 -

I.   **Background**

In 1972, Peter Armata was robbed and murdered in an
apartment belonging to Robert Anderson ("Anderson").  Four days
later, police arrested Anderson and charged him with the murder.
After his arrest, Anderson spoke with two BPD detectives, Edward
Sherry and Jerome McCallum, and inculpated plaintiff.  Plaintiff
was subsequently charged with murder.

After plaintiff's arrest, BPD detectives Frank Olbrys and
Edward Kennealy interviewed Anderson's brother, William.  During
that interview, he claimed that Anderson, not plaintiff, was
responsible for the murder.  According to plaintiff, neither he
nor his counsel ever received the tape or transcript of that
interview.  In 1973, plaintiff was tried for murder, found
guilty, and sentenced to life in prison.  The Massachusetts
Supreme Judicial Court ("the SJC") declined to disturb his
sentence on appeal. See Commonwealth v. Mazza, 313 N.E.2d 875
(Mass. 1974).

Two decades later, in the 1990s, plaintiff learned of the
statements Anderson's brother had made to the police that
incriminated Anderson and exculpated plaintiff.  After a
convoluted legal dispute, plaintiff received a transcript of the
statement in 2005.  Based on that statement, the SJC granted
plaintiff a new trial in 2020. See Commonwealth v. Mazza, 142
N.E.3d 579, 581 (Mass. 2020).  The Commonwealth, however,

declined to re-prosecute the charge and plaintiff succeeded in having the conviction expunged from his record.

In 2024, plaintiff filed a complaint in this Court against the City and the officers, all of whom plaintiff avers are deceased.  Plaintiff asserts six counts against the City and the officers, all brought under 42 U.S.C. §1983: 1) deliberate suppression of material evidence, 2) malicious prosecution, 3) conspiracy to deprive constitutional rights, 4) failure to intervene, 5) supervisory liability, and 6) a Monell claim. Plaintiff variously alleges that the City is responsible for the officers' actions based on indemnification, under respondeat superior, and because the City maintained policies and practices that deprived plaintiff of constitutional rights.

Now, the City moves to dismiss these claims for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Plaintiff, in turn, moves to compel the City to accept service on behalf of the officers based on M.G.L. c. 190B §3-803, as applicable here pursuant to 42 U.S.C. §1988.  Plaintiff also moves to extend the time to complete service of process for up to 14 days after the issuance of an order.  The Court will address resolution of the pending motions in turn.

**II.** **<u>Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>**

The City first moves to dismiss for lack of subject matter jurisdiction because it claims plaintiff has no standing to hold the City directly responsible for the officers' actions by way of indemnification.  Plaintiff, in his opposition to that motion, does not directly challenge the assertion of lack of standing but instead suggests that his indemnification claim is "mere surplusage" that the Court can disregard.

Generally, an opposition to a motion to dismiss is "not the proper vehicle" to alter the allegations made in a complaint. <u>Michel</u> v. <u>LoanCare, LLC</u>, No. CV 21-11018-FDS, 2022 WL 355866, at *7 n.7 (D. Mass. Feb. 7, 2022).  On at least one occasion, however, another session of this Court has allowed a plaintiff in a reply to a motion to dismiss to clarify his complaint. <u>Johnson</u> v. <u>Brown & Williamson Tobacco Corp.</u>, 122 F. Supp. 2d 194, 208 n.1 (D. Mass. 2000).  In <u>Johnson</u>, plaintiff's complaint had alleged a claim of "true conspiracy" in addition to "joint liability" against defendant. <u>Id</u>.  In response to defendant's motion to dismiss, plaintiff clarified that he sought only to claim a "joint liability civil conspiracy." <u>Id</u>. The Court treated the "true conspiracy" aspect of plaintiff's complaint as "mere surplusage." <u>Id</u>.

Plaintiff's complaint here expressly alleges that the City is "obligated to indemnify" the officers.  Given that his

response to the City's motion unambiguously disclaims any right to indemnification, this Court will follow the logic in <u>Johnson</u> and accept those allegations as mere surplusage and hereinafter disregard them. <u>See</u> 122 F. Supp. 2d at 208 n.1.  It remains only to determine whether the balance of plaintiff's complaint, absent a claim against the City for indemnification, states a viable claim at law.  <u>See</u> <u>Garcia</u> v. <u>Fantauzzi</u>, 20 F.2d 524, 527 (1st Cir. 1927) (recognizing that even where complaint is "imperfectly drawn and contains superfluous and irrelevant allegations . . . [a] general demurrer [i.e., a motion to dismiss] cannot be sustained . . . if, fairly construing the complaint, a case is stated").

### III. **Motion to Dismiss for Failure to State a Claim**

The City next moves to dismiss plaintiff's complaint for failure to state a claim.  Because that motion concerns only claims brought against the City, the Court also disregards Counts 1 through 6 against the officers, the BPD and any other defendants individually, and addresses only the §1983 claims of municipal liability against the City.  <u>See</u> <u>Coulsey</u> v. <u>Option One Mortg. Corp.</u>, No. 15-CV-10471-MGM, 2016 WL 8710881, at *1 (D. Mass. Sept. 30, 2016) (confining discussion of motion to dismiss only to claims brought against moving party).

To survive a motion to dismiss, a plaintiff complaint must contain factual matter sufficient to state a claim for relief

that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible if, after accepting as true all non-conclusory factual allegations, the Court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  In considering the merits of a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).

The requirements for bringing a §1983 claim against a municipality are articulated by the United States Supreme Court in Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978), in which the Court held that

> [A] municipality cannot be held solely liable because it employs a tortfeasor [and thus] cannot be held liable under §1983 on a respondeat superior theory [for the actions of its agents, employees, officers, or the like].

Id. at 691 (emphasis in original).  A municipality can, however, be held liable if an "official policy" or practice of the municipality "cause[d] an employee to violate another's constitutional rights." Id. (internal quotations omitted).  This limitation on municipal liability under §1983, as recognized by the Supreme Court in Monell, stemmed from

[C]oncern[] that municipal liability based on fault by the City [would] collapse into de facto respondeat superior.

Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 26 (1st Cir. 2005).

**A. Direct Liability Against the City**

Plaintiff's §1983 claims, under Counts 1 through 6, first advance allegations of direct liability against the City. His complaint asserts that the City is liable under "the doctrine of respondeat superior" for the officers' alleged wrongs, namely, depriving plaintiff of his constitutional rights by failing to disclose the exculpating statements made by Anderson's brother. That claim is incorporated by reference into Counts 1 through 6 of the complaint. Counts 1 and 6 further reiterate direct allegations of liability against the City for the actions taken by the City's "officers, agents, and employees."

The Monell decision effectively precludes the direct liability of the City on those counts. It is well settled that plaintiff cannot, per Monell, "hold [the City] liable under a theory of respondeat superior." Board of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Accordingly, plaintiff's assertions that the City is directly responsible for the actions of the officers fails as a matter of law against the City. Specifically, Count 5 fails because it addresses only the actions of the officers and supervisors of the BPD. A §1983

claim against a police department is not, however, the same as a claim against a municipality.  Cf. Henschel v. Worcester Police Dept., 445 F.2d 624, 624 (1st Cir. 1971) (dismissing §1983 suit because it was brought against police department rather than municipality itself).  Similarly, all aspects of Counts 1 through 4 and 6 that allege any form of direct liability against the City based upon actions of its "officers, agents, and employees" likewise fail because the City is not directly responsible for the actions of its officers or supervisors.  See Monell, 436 U.S. at 692 (holding that municipality is "not responsible for the . . . unlawful acts of its officers").

### B. Indirect Liability Under Monell

In addition to his assertion of direct liability against the City, plaintiff contends, in Counts 1 through 4 and 6, that the alleged violations of his constitutional rights result from 1) the City's policies, regulations and procedures and 2) the City's practices in failing to train and supervise its officers. Cf. Haley v. City of Boston, 657 F.3d 39, 51-52 (1st Cir. 2011) (recognizing claims based on policies and allegations of failure to train and supervise as separate forms of Monell liability). For reasons that are unclear, plaintiff asserts claims against the City's policies and practices in Counts 1 through 4 and 6 but limits its reference to a "Monell claim" to Count 6. Nevertheless, the effect of these allegations is an expansive,

multi-part Monell claim.   See Torres Ramirez v. Bermudez Garcia, 898 F.2d 224, 226-27 (1st Cir. 1990) ("It is not fatal to a complaint that a legal theory has been mischaracterized.").

### 1. Alleged Unconstitutional Policies

To successfully impose Monell liability on a municipality for its policies and practices, a plaintiff must first show that the alleged deprivation of constitutional rights occurred as a result of the municipality's "policy or custom." DiRico v. City of Quincy, 404 F.3d 464, 468-69 (1st Cir. 2005); Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) (quoting Monell, 436 U.S. at 694).   This in effect requires proof of a causative link between the municipality's policy or practice and the harm the plaintiff alleges. See Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989) (collecting cases requiring causative link). The plaintiff must also demonstrate that

> [The] municipal decisionmakers knew or should have known [that the policy was inadequate but] nonetheless exhibited deliberate indifference to the unconstitutional effects of those inadequacies.

Echavarria v. Roach, 565 F. Supp. 3d 51, 91 (D. Mass. 2021) (quoting Gray v. Cummings, 917 F.3d 1, 14 (1st Cir. 2019)).

Here, plaintiff contends that officers withheld exculpatory evidence from him, namely the statement made by Anderson's brother, conspired to prosecute and deprive him of his rights, and failed to intervene on his behalf.   Regarding the witness

statement, plaintiff blames his conviction on the City, whose policies, regulations, rules, and practices he alleges were prejudicial.  Moreover, plaintiff claims that municipal authorities had notice of police misconduct yet allowed it to continue with deliberate indifference to the harm caused.

Such allegations are analogous to those in Haley v. City of Boston and are therefore sufficient to state a plausible Monell claim.  In Haley, plaintiff claimed the BPD withheld exculpatory statements made by his sister and that the withholding was pursuant to standing BPD policy. Haley, 657 F.3d at 52. Plaintiff's complaint contrasted the policy with that of the district attorney's office, which purportedly had a policy of disclosing all exculpatory evidence as required, and asserted that the difference caused his conviction. Id. (citing Brady v. Maryland, 373 U.S. 83 (1963)).  On these facts, the First Circuit recognized the Monell claim as plausible. See id. (determining valid Monell claim based on claim that police withheld "statements . . . pursuant to a standing BPD policy, under which . . . officers regularly kept helpful evidence from criminal defendants," and which caused a "wrongful conviction").

Contrary to the City's assertion, plaintiffs are not required to detail the alleged unconstitutional policies with specificity at the pleading stage. Compare Cosenza v. City of Worcester, 355 F. Supp. 3d 81, 91 (D. Mass. 2019) (finding

sufficient facts to allege Monell claim under Haley where plaintiff alleged that a widespread policy caused constitutional violations), with McClinton v. City of Boston, No. CV 19-11235-LTS, 2020 WL 1245307, at *2 (D. Mass. Mar. 16, 2020) (finding insufficient facts to allege Monell claim under Haley where plaintiff failed to connect his constitutional violation to allegations of any municipal policy or practice).

## 2. Alleged Failure to Train and Supervise

To demonstrate a Monell claim based on a failure to train, a plaintiff must show that

> [M]unicipal decisionmakers either knew or should have known that training was inadequate but nonetheless exhibited deliberate indifference to the unconstitutional effects of those inadequacies.

Haley, 657 F.3d at 52.  Deliberate indifference typically requires a "pattern of similar constitutional violations." Aprileo v. Clapprood, No. 3:21-CV-30114-MGM, 2024 WL 3430855, at *9 (D. Mass. May 21, 2024) (citing Connick v. Thompson, 563 U.S. 51, 62 (2011)), report and recommendation adopted, No. CV 21-30114-MGM, 2024 WL 3665802 (D. Mass. Aug. 6, 2024); Hill v. Walsh, 884 F.3d 16, 24 (1st Cir. 2018).  Thus, "isolated instances of unconstitutional activity" are often "insufficient to establish . . . deliberate indifference."  Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994).

Plaintiff here claims that the officers' unconstitutional actions resulted from the City's failure properly to train and supervise its officers on appropriate procedures, namely the proper handling of evidence and witness interviews.  Cf. Haley, 657 F.3d at 51-52 (recognizing claims based on failure to train and supervise as alternative argument to claim of unconstitutional policy under Monell).  Plaintiff contends that the City was responsible for training its officers and that the City's failure adequately to train or supervise them caused the alleged unconstitutional withholding of evidence.

Such allegations, unlike plaintiff's more general claims with respect to the City's policies, fail to survive the City's motion to dismiss.  Plaintiff has not alleged anything that would amount to "deliberate indifference," as the First Circuit has defined it.  See Maldonado-Denis, 23 F.3d at 582. Specifically, his complaint fails to allege that his harm is related in any way to a history of recurring rights violations, nor does he claim another instance of an unconstitutional withholding of evidence or improper interview that would constitution a Monell violation.  See Aaron v. City of Lowell, No. 20-CV-11604-ADB, 2022 WL 2953033, at *4 (D. Mass. July 26, 2022) (finding insufficient facts to allege Monell claim where plaintiff failed to show pattern of conduct); Qualls v. Roache, No. CV 23-10435-GAO, 2024 WL 1333610, at *2 (D. Mass. Mar. 28,

2024) (finding failure to establish <u>Monell</u> claim based
allegation of plaintiff's own injury without pattern of
conduct).  While there are instances where a violation is "so
obvious" that a failure to train is self-evident, plaintiff
makes no assertion that this is such a case. <u>Hill</u>, 884 F.3d at
24 (citing <u>City of Canton</u> v. <u>Harris</u>, 489 U.S. 378, 390 (1989)).
Instead, as courts have recognized, the criteria for liability
in failure-to-train cases are "exceptionally stringent" and
difficult to prove, and the instant case is no exception.
<u>Hayden</u> v. <u>Grayson</u>, 134 F.3d 449, 456 (1st Cir. 1998); <u>see</u>
<u>Connick</u>, 563 U.S. at 61 ("A municipality's culpability for a
deprivation of rights is at its most tenuous where a claim turns
on a failure to train.").

Because failure-to-supervise claims are subject to the same
stringent standard as failure-to-train claims, plaintiff's
allegation that the City is liable for failure to supervise is
equally unavailing. <u>See</u> <u>Consolo</u> v. <u>George</u>, 835 F. Supp. 49, 51
n.1 (D. Mass. 1993) ("Although the Supreme Court cases only
discuss failure to train claims, this Court has held that the
same standard is equally applicable to failure to supervise.").
Allegations of one's own injury, unmoored from a pattern of
conduct by the municipality, thus cannot support a <u>Monell</u> claim
on a theory of failure either to train or supervise. <u>Cf</u>. <u>Haley</u>,

657 F.3d 39 at 52 (finding <u>Monell</u> claim for failure to train and supervise plausible based on "volume of [similar] cases").

## III.  <u>Motion to Serve</u>

Plaintiff next moves to compel the City to accept service of process on behalf of the officers.  Under the statute plaintiff cites, a claim of personal injury brought against a deceased individual can be served on that individual's personal representative if the action is filed within one year of the individual's death.  M.G.L. c. 190B §3-803(a).  After that allotted time, a claim can be brought only if:

> 1) [T]he action is commenced not later than 3 years after the . . . action accrues [and] 2) any judgment recovered . . . [will] only be satisfied from the proceeds of a policy of liability bond or liability insurance.

<u>Id</u>.  If no personal representative has been appointed, the plaintiff can

> [N]ame the decedent[s] as the defendant[s] [directly, and] any service of process that may be necessary [can effectively be] made upon the entity providing the [liability] insurance or bond.

M. G. L. c. 190B §3-803(d)(2).

There is no dispute here among the parties that plaintiff's action, a §1983 claim, is a personal injury claim under Massachusetts law.  See <u>Pomeroy</u> v. <u>Ashburnham Westminster Regional School Dist.</u>, 410 F. Supp. 2d 7, 12-14 & n.5 (D. Mass. 2006) (holding that courts treat §1983 claim "as a claim for personal injury under Massachusetts law" (internal quotations

omitted)).  The parties likewise do not appear to contest that this action was timely commenced.  Thus, the only dispute is whether the City is subject to a "policy of liability bond or liability insurance" for the officers' actions and, as such, is eligible to be served on the officers' behalf.  Plaintiff argues that the City is subject to such service pursuant to §3-803(d)(2) because a liability bond is required under the indemnification clause in its Collective Bargaining Agreement ("CBA") with the BPD.

### A. Form of Indemnification

The parties dispute at the outset the form of indemnification applicable to the City.  Massachusetts law provides two forms of indemnification to which municipalities may be subject.  Under M.G.L. c. 258, §9, municipalities

> [M]ay indemnify public employees . . . from personal financial loss [that arises out of any claim based on violations] of the civil rights of any person under any federal or state law.

(emphasis added).  It is well settled that this form of indemnification is permissive such that a municipality can choose to indemnify the individual but is not obligated to do so.  See Triplett v. Town of Oxford, 791 N.E.2d 310, 315 (Mass. 2003) (indicating that municipalities have "discretion to indemnify public employees" under §9).  By contrast, under M.G.L. c. 258, §13, a public employer "shall indemnify" certain

persons. (emphasis added).  Once a municipality authorizes indemnification under §13, it becomes mandatory.  See Williams v. City of Brockton, No. CIV.A. 12-10430-JGD, 2013 WL 254778, at *6 (D. Mass. Jan. 23, 2013) (contrasting indemnification under §9 and §13 and indicating that the latter form is "mandatory").

Here, plaintiff's complaint asserts that indemnification under §13 applies, while the City's motion to dismiss contends §9 is applicable.  After due consideration, the Court concludes there is no support for plaintiff's assertion.  Plaintiff in fact later produced an agreement demonstrating that the CBA indemnifies police officers only "to the extent permitted by M.G.L. c. 258, §9" (emphasis added).  As a result, the Court is satisfied that the City is subject to §9, not §13.

Nevertheless, plaintiff contends that the language in the CBA indemnifying officers to the extent allowed by §9 imposes mandatory indemnification on the City.  To the contrary, however, that language makes indemnification permissive, not mandatory, and permits the City to indemnify or not on a case-by-case basis.  Cases from other sessions of this Court and state court have interpreted nearly identical provisions similarly.  See Williams v. City of Brockton, No. CIV.A. 12-10430-JGD, 2013 WL 254778, at *8 (D. Mass. Jan. 23, 2013) (finding contractual provision that required "indemnification . . . as per M.G.L. c. 258, §9" left city with "discretion to

determine whether to indemnify its officers on a case-by-case basis"); City of Bos. v. Bos. Police Patrolmen's Ass'n, Inc., 717 N.E.2d 667, 668 (Mass. App. Ct. 1999) (indicating that contractual provision obligating city to indemnify officers "to the extent permitted by [M.]G.L. c. 258, §9" would leave city with "discretionary power to decide whether to indemnify on a case-by-case basis").

Moreover, the CBA itself precludes reading its §9 indemnification as mandatory.  If the CBA had intended make indemnification mandatory, it could have so provided by relying on §13 or otherwise.  It did not do so, and this Court cannot read into the CBA a more extensive indemnification than the parties bargained for. See McCormick v. Lischynsky, 539 F. Supp. 3d 225, 243 (D. Mass. 2021) (recognizing that courts "may not read into an agreement terms that are not reasonably encompassed by the language of the agreement itself").  In the absence of a specific disclaimer of discretion, the City retains it. See Williams, 2013 WL 254778, at *4 (finding claim that §9 "mandates indemnification" to be "inconsistent with the statutory language"); see also Stull v. Town of Weymouth, No. CIV.A. 11-11549-JLT, 2013 WL 5592605, at *6 (D. Mass. Oct. 9, 2013) (indicating that "[§] 9 . . . permits but does not require a municipality to indemnify its employees . . . .").

**B. Indemnification as a Liability Bond**

Having determined that the City is subject only to the discretionary form of indemnification under §9, the only remaining question is whether such indemnification is a "liability bond" for purposes of §3-803(d)(2).  That issue is one of first impression. Cf. Weichel v. Town of Braintree, No. 1:20-CV-11456-IT, 2022 WL 17852109, at *1-2, *4 (D. Mass. Dec. 22, 2022) (recognizing but not resolving issue of whether §9 indemnification creates "policy of liability bond").

Different sessions of this Court have concluded that indemnification under §13 is a "policy of liability bond" for purposes of §3-803(d)(2). See Rosario v. Waterhouse, No. 1:19-cv-10532-LTS, 2019 WL 4765082, at *2 (D. Mass. Sep. 27, 2019) ("[T]he City's obligation [under §13] must be understood as a policy of liability bond within the meaning of [§3-803](d)(2)." (internal quotations omitted)); Cifizzari, 2024 WL 869149, at *4 ("[A t]own's indemnification obligation under . . . §13 is a policy of liability bond." (internal quotations omitted)).  As the court explained in Rosario, the term "liability bond" is not defined within the statute itself and therefore is assumed to retain its plain, ordinary meaning. 2019 WL 4765082, at *3 (D. Mass. Sept. 27, 2019) (citing Casey v. Mass. Elec. Co., 467 N.E.2d 1358, 1362 (Mass. 1984)).  In defining that term's ordinary meaning, Rosario relied on dictionary definitions of

the terms "bond" and "liability bond" respectively.  Rosario, 2019 WL 4765082, at *3 (D. Mass. Sept. 27, 2019) (quoting Black's Law Dictionary 200-01 (9th ed. 2009))).  Based on these definitions, Rosario classified mandatory indemnification under §13 as a policy of liability bond under §3-803(d)(2). 2019 WL 4765082, at *3 (citing Echavarria v. Roach, No. 16-CV-11118-ADB, 2017 WL 3928270, at *14 n.14 (D. Mass. Sept. 7, 2017)).

    As applied to §9 indemnification, however, this session finds the interpretation of "liability bond" in Rosario to be inconsistent with the prevailing meaning of liability bond.  The term liability bond has long been defined as a promise to pay a victim directly for a wrongdoer's alleged harm. In re Opinion of the Justs., 147 N.E. 681, 686 (Mass. 1925); Flaherty v. Travelers Ins. Co., 340 N.E.2d 888, 890 n.1 (Mass. 1976). Indemnification, by contrast, creates a promise to reimburse the wrongdoer after the victim has already brought a claim and held him responsible for the injury he caused, not to pay the victims themselves. Rathbun v. W. Massachusetts Elec. Co., 479 N.E.2d 1383, 1385 (Mass. 1985); Stull v. Town of Weymouth, No. CIV.A. 11-11549-JLT, 2013 WL 5592605, at *6 (D. Mass. Oct. 9, 2013); see Barry v. Keeler, 76 N.E.2d 158, 165 (Mass. 1947) (collecting cases).  This distinction has long been recognized by other jurisdictions. See, e.g., Twichell v. Hetzel, 64 P.2d 557, 560 (Kan. 1937) (contrasting promise to indemnify with "liability

bond"); <u>Gooschin</u> v. <u>Mercer Cas. Co.</u>, 34 P.2d 435, 436 (Wash. 1934) (same); <u>Fenton</u> v. <u>Poston</u>, 195 P. 31, 33 (Wash. 1921) (same); <u>see also, e.g.</u>, <u>Tulchinsky</u> v. <u>Pub. Serv. Mut. Cas. Ins. Corp.</u>, 282 N.Y.S. 944, 946 (App. Div. 1935) (distinguishing between promise to indemnify and promise of liability coverage).

Given the distinction between the accepted legal definitions of liability bond and indemnification, it would be inconsistent with the plain text of the statute to read "liability bond" as encompassing a promise to indemnify. <u>See</u> <u>Ellis</u> v. <u>Ford Motor Co.</u>, 628 F. Supp. 849, 854 (D. Mass. 1986) (assuming legislature intends for statutory terms to be read consistently with their accepted legal meaning); <u>see also</u> <u>Benitez-Pons</u> v. <u>Com. of Puerto Rico</u>, 136 F.3d 54, 64 (1st Cir. 1998) (indicating courts cannot "read into [statutes] a meaning that directly conflicts with the intent of the legislature"). Indeed, it is not for this Court to insert promises of indemnification into §3-803(d)(2) where the Legislature specifically limited recovery to liability bonds and liability insurance. <u>See</u> <u>L.F.O.P.</u> v. <u>Mayorkas</u>, 656 F. Supp. 3d 274, 279 (D. Mass. 2023) ("This Court cannot read words into [a] statute that are not there."). Accordingly, the Court finds that §9 indemnification, applicable here via the CBA, cannot be classified as a liability bond for purposes of §3-803(d)(2).

Because the City does not owe the officers a liability bond
for their alleged actions, the requirements for service under
§3-803(d)(2) have not been met.  Therefore, plaintiff cannot
compel the City to accept service on behalf of the officers.

## IV.   **Motion to Extend Time for Service**

Plaintiff finally moves for an extension of time to
complete service.  Under Fed. R. Civ. P. 4(m), a district court
may extend the 90-day period for serving summons "if the
plaintiff shows good cause" for his failure to serve a defendant
within the required 90 days.  Good cause is likely to be found

> [W]hen the plaintiff's failure to complete service in
> timely fashion is a result of a third person . . . the
> defendant has evaded service of the process or engaged in
> misleading conduct, [or] the plaintiff has acted diligently
> in trying to effect service or there are understandable
> mitigating circumstances[.]

McIsaac v. Ford, 193 F. Supp. 2d 382, 383 (D. Mass. 2002)
(quoting Wright & Miller, 3 Federal Practice & Procedure §1137
(2002)).  Even in the absence of good cause, a court may still
"exercise its discretion to enlarge the time for service." Bell
v. Rinchem Co., Inc., 2014 WL 11290899, at *4 (D. Mass. Mar. 10,
2016).

Here, plaintiff concedes that the officers themselves
cannot be served because they have all been deceased for more
than one year.  Nevertheless, plaintiff claims that there is
good cause to extend the deadline for serving process based on

his argument that the City is the appropriate recipient of service on behalf of the officers.  As determined above, however, the City is not required to accept such service and there is no other entity available.  Accordingly, there is no reason to extend the time for plaintiff to effectuate service.

**ORDER**

For the foregoing reasons:

A.  The City's motion to dismiss (Docket No. 8) is:

   1) as to Count 5 and all aspects of Counts 1 through 4 and Count 6 that allege claims against the City under respondeat superior and for failure to train and supervise under <u>Monell</u>, **ALLOWED,** but

   2) as to all other aspects of Counts 1 through 4 and Count 6 that allege liability against the City under <u>Monell</u> based on constitutional violations resulting from the City's deliberate indifference to known widespread policies, **DENIED.**

B. Plaintiff's motion to serve (Docket No. 13) is **DENIED.**

C. Plaintiff's motion for extension of time for service (Docket No. 22) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated:  October 15, 2024