United States District Court
District of Massachusetts

|  |  |
|---|---|
| Anthony Mazza,<br><br>    Plaintiff,<br><br>    v.<br><br>City of Boston et al.,<br><br>    Defendants. | Civil Action No.<br>24-10333-NMG |

**MEMORANDUM & ORDER**

GORTON, J.

This case arises from the purported wrongful murder conviction of plaintiff, Anthony Mazza ("plaintiff" or "Mazza"). In a previous order, this Court denied plaintiff's motion to serve defendant, the City of Boston ("the City"), on behalf of certain deceased police officers and allowed, in part, the City's motion to dismiss. Plaintiff now moves for reconsideration. For the reasons that follow, the motion to reconsider will be denied.

**I. Background**

As the Court previously explained, plaintiff's case began in 1972 when a man was robbed and murdered in an apartment belonging to Robert Anderson ("Anderson"). Police arrested Anderson who then spoke with two Boston Police Department ("BPD") detectives and inculpated plaintiff.

- 1 -

After plaintiff's arrest, BPD detectives interviewed Anderson's brother, William, who allegedly told them that Anderson, not Mazza, was responsible for the murder. According to plaintiff, neither he nor his counsel ever received the recording or transcript of that interview. In 1973, plaintiff was tried, found guilty of murder and sentenced to life in prison. See Commonwealth v. Mazza, 313 N.E.2d 875 (Mass. 1974).

Two decades later, Mazza learned about the statements Anderson's brother had made to the BPD detectives. Based upon those statements, the SJC granted plaintiff a new trial. See Commonwealth v. Mazza, 142 N.E.3d 579, 581 (Mass. 2020). The Commonwealth chose not to re-prosecute and plaintiff succeeded in having the conviction expunged from his record.

In 2024, plaintiff filed suit in this Court against both the City and numerous BPD detectives and officers, all of whom plaintiff avers are now deceased. The City moved to dismiss and plaintiff subsequently moved to compel the City to accept service of process on behalf of the deceased police officers.

This Court allowed, in part, the City's motion to dismiss plaintiff's claims of direct liability and his civil rights claim against the City for failure to train its officers, finding plaintiff had failed to state such claims. In that same order, the Court denied plaintiff's motion to serve, finding that the City's agreement with police officers did not establish

a policy of "liability bond" that could compel the City to accept service of process under M.G.L. c. 190B § 3-803, applicable here under 42 U.S.C. § 1988. Plaintiff now moves for this Court to reconsider its order or, alternatively, to report those issues to the First Circuit Court of Appeals ("the First Circuit") for interlocutory appeal.

## II. Motion to Reconsider

### A. Standard for Reconsideration

Although plaintiff does not clearly identify the basis of his motion for reconsideration, it is well established that the two primary standards for reconsideration under Fed. R. Civ. P. 59(e) and 60 are not available where, as here, a court denied or denied, in part, a motion to dismiss. See Barrows v. Resol. Tr. Corp., 1994 WL 643309, at *3 (1st Cir. 1994) ("Rule 59(e) . . . applies only to final judgments"); Farr Man & Co. v. M/V Rozita, 903 F.2d 871, 874 (1st Cir. 1990) ("Rule 60 applies only to final judgments."); see also First Med. Health Plan, Inc. v. Vega-Ramos, 479 F.3d 46, 50 (1st Cir. 2007) (indicating that the denial of a motion to dismiss is not a final judgment).

In the absence of a specific rule applicable to non-final judgments, district courts retain an "inherent power" to reconsider and amend prior orders "at any time" before the entry of final judgment. Fernandez-Vargas v. Pfizer, 522 F.3d 55, 61 n.2 (1st Cir. 2008); Pure Distributors, Inc. v. Baker, 285 F.3d

150, 156 (1st Cir. 2002) (citing Fed. R. Civ. P. 54(b)). The Supreme Court has cautioned, however, that "courts should be loathe" to reconsider orders absent "extraordinary circumstances" and, as such, it is a means of relief that courts apply only "sparingly." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817, (1988) (citation omitted); Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006).

To prevail on a motion for reconsideration of a non-final order, the moving party must demonstrate that one of three "limited" circumstances applies by 1) presenting the Court with "newly discovered evidence," 2) offering an "intervening change in applicable law" that is controlling or 3) asserting that the Court's prior order suffers from "a manifest error of law" or "was clearly unjust." United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009) (citing Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005)); see Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 82 (1st Cir. 2008) (indicating manifest error may occur where a court fundamentally misunderstood a party's motion). Mere disagreement with the reasoning or outcome of a prior order is not an adequate basis for reconsideration and a motion to reconsider a non-final order cannot be used simply to "advance arguments that could have . . . been presented to the district court" previously. Ofori v.

Ruby Tuesday, Inc., 205 F. App'x 851, 852-53 (1st Cir. 2006); Iverson v. City of Boston, 452 F.3d 94, 104 (1st Cir. 2006).

### B. Reconsideration of Motion to Dismiss

As grounds for reconsideration, plaintiff first submits that this Court erred in dismissing his failure-to-train claim. Plaintiff avers that dismissal of that claim is inconsistent with the First Circuit's decision in Haley v. City of Boston, 657 F.3d 39, 52 (1st Cir. 2011) and therefore must be reversed.

Mazza does not present new evidence to the Court such as newly discovered facts that would illustrate a pattern of discriminatory conduct, nor does he proffer any change in the controlling law. Instead, his argument rests largely upon a disagreement with this Court's prior order dismissing his claim and its decision to distinguish Haley. Regurgitation of previously rejected arguments offers no basis for reconsideration. See Ofori, 205 F. App'x at 852-53; Iverson, 452 F.3d at 104.

Even if plaintiff's basis for reconsideration were viable, an order dismissing his claim for failure to train would still be warranted. To state a claim for an alleged violation of civil rights against a municipality under 42 U.S.C. § 1983, known as a Monell claim, a plaintiff must adequately allege that an "official policy" or practice of the municipality "cause[d] an employee to violate another's constitutional rights." Monell

v. Dept. of Soc. Servs. of City of N.Y., 436 U.S. 658 (1978); DiRico v. City of Quincy, 404 F.3d 464, 468-69 (1st Cir. 2005); Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) (quoting Monell, 436 U.S. at 694). A Monell claim based upon a purported failure to train municipal employees requires a causal link between the municipality's policy and the plaintiff's injury and that

> municipal decisionmakers knew or should have known [that the policy was inadequate but] nonetheless exhibited deliberate indifference [as to its] unconstitutional effects.

Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989); Echavarria v. Roach, 565 F. Supp. 3d 51, 91 (D. Mass. 2021) (quoting Gray v. Cummings, 917 F.3d 1, 14 (1st Cir. 2019)).

To demonstrate deliberate indifference, allegations of "[i]solated instances of unconstitutional activity," without more, are often "insufficient." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994). Plaintiffs must instead allege a "pattern of . . . constitutional violations" similar to defendant's. Aprileo v. Clapprood, No. 3:21-CV-30114-MGM, 2024 WL 3430855, at *9 (D. Mass. May 21, 2024) (citing Connick v. Thompson, 563 U.S. 51, 62 (2011)), report and recommendation adopted, No. CV 21-30114-MGM, 2024 WL 3665802 (D. Mass. Aug. 6, 2024); Hill v. Walsh, 884 F.3d 16, 24 (1st Cir. 2018). In Haley, for example, plaintiff claimed that police

withheld exculpatory statements made by his sister and that the withholding was pursuant to a standing policy. Haley, 657 F.3d at 52. Plaintiff's complaint asserted that his injury arose from the City's deliberate indifference and specifically contrasted its policy with the policy of the district attorney's office to disclose exculpatory evidence as required. Id. (citing Brady v. Maryland, 373 U.S. 83 (1963)). On those facts, the First Circuit recognized the Monell claim as plausible. See id.

Here, by contrast, plaintiff does not allege a single other instance of such a withholding of evidence that would constitute a Monell violation. Instead, he alleges only the general legal conclusion that the City failed to train and supervise its officers. Under similar circumstances, other sessions of this Court have routinely dismissed failure-to-train claims for want of a sufficient pattern of conduct. See, e.g., Aaron v. City of Lowell, No. 20-CV-11604-ADB, 2022 WL 2953033, at *4 (D. Mass. July 26, 2022); Qualls v. Roache, No. CV 23-10435-GAO, 2024 WL 1333610, at *2 (D. Mass. Mar. 28, 2024). The requirements for failure-to-train claims are, in short, "exceptionally stringent" and difficult to prove, and this case is no exception. Hayden v. Grayson, 134 F.3d 449, 456 (1st Cir. 1998). The Court therefore declines to reconsider dismissal of plaintiff's claim for failure to train.

### C. Reconsideration of Motion to Serve

Mazza also asserts that the Court erred in denying his motion to compel the City to accept service on behalf of the deceased officers. He suggests that this Court improperly interpreted the applicable Collective Bargaining Agreement ("CBA"), which the City has apparently applied to grant indemnification in other cases, and wrongly distinguished its indemnification clause from a "liability bond" that would require the City to accept service of process.

As before, plaintiff does not suggest that this Court's decision was predicated upon a lack of evidence or that there has been a change in the law. Instead, plaintiff repeats his arguments about the statutory meaning of "liability bond" and the proper interpretation of the Collective Bargaining Agreement ("CBA"), i.e., he disagrees with the decision of this Court. That is not a viable ground for reconsideration. See Ofori, 205 F. App'x at 852-53; Iverson, 452 F.3d at 104.

Plaintiff's implicit contention that the denial of the motion to serve rested upon a "manifest error of law" is unavailing. As the Court previously explained, a personal injury claim brought more than one year after the putative defendant dies, as is the case here for the deceased officers, can be brought only if the judgment recovered would "be satisfied from the proceeds of a policy of liability bond or

liability insurance." M.G.L. c. 190B §3-803(a). Plaintiff again asserts that the language in the CBA regarding indemnification creates a "liability bond." In relevant part, the CBA provides, however, that the City "will . . . indemnify [the police officers] . . . to the extent permitted by M.G.L. c. 258 §9." That section provides that municipalities "may" choose, on a case-by-case basis, whether to "indemnify public employees." M.G.L. c. 258 §9. There is no requirement to do so in all cases. See Williams v. City of Brockton, No. CIV.A. 12-10430-JGD, 2013 WL 254778, at *8 (D. Mass. Jan. 23, 2013) (agreeing that contract term relying on §9 left the City with "discretion to determine whether to indemnify").

Although plaintiff rejoins that use of the term "will" makes indemnification mandatory, and that the term "will represent" removes the CBA's term from the purview of the permissive indemnification applied in Williams, such a reading would render the phrase "to the extent permitted by M.G.L. c. 258, §9" mere surplusage. If the City had wanted to adopt mandatory indemnification, it could have easily done so. As it is, the CBA imposes discretionary indemnification and any assertion that the City has exercised that discretion in some cases does not abrogate the meaning of that contractual term. The Court declines to reconsider whether the City must accept service.

III. **Motion for Interlocutory Appeal**

Mazza moves, in the alternative, to pursue an interlocutory appeal to the First Circuit with respect to the issues of whether the City is required to accept service and whether plaintiff has properly pled a failure-to-train Monell claim.

Under 28 U.S.C. §1292(b), district courts may permit interlocutory appeals if the court's order 1) involved a "controlling question of law," 2) there is a "substantial ground for difference of opinion" as to that question of law and 3) an immediate appeal will "materially advance" the ultimate outcome of the litigation. Caraballo-Seda v. Municipality of Hormigueros, 395 F.3d 7, 9 (1st Cir. 2005). Interlocutory appeals are "used sparingly," however, and only in the presence of "exceptional circumstances," such as where a case presents "pivotal" questions of law that are not yet "settled by controlling authority." Id.; see Swint v. Chambers Cnty. Comm'n, 514 U.S. 35, 46 (1995).

Here, neither of plaintiff's issues for interlocutory appeal provides a viable basis for reporting to the First Circuit. First, although the indemnification issue may be controlling as to whether the deceased officers can be served, that issue does not offer "substantial ground for a difference of opinion" among sessions of this Court. Since this Court's decision, which apparently was the first to find that §9

- 10 -

indemnification is not a liability bond under M.G.L. c. 190B §3-803, other sessions have followed suit. See, e.g., Lucien v. Brazil, 1:24-cv-11341-RGS, Docket Nos. 62 and 77 (D. Mass. 2024); Pope v. City of Boston, 1:24-cv-10980-DJC, Docket No. 70 (D. Mass. 2025); see also Weichel v. Town of Braintree, No. 1:20-CV-11456-IT, 2025 WL 863598, at *6 (D. Mass. Mar. 18, 2025) cf. Rosario v. Waterhouse, No. 1:19-cv-10532-LTS, 2019 WL 17852109, at *1, *4 (finding §13 indemnification is a policy of "liability bond" under M.G.L. c. 190B §3-803). Moreover, the proper interpretation of M.G.L. c. 190B §3-803 is a question of state law and certification of a question of law to the Massachusetts Supreme Judicial Court, not an interlocutory appeal to the First Circuit, would have been the "appropriate vehicle," if any, to reconsider that issue. A.J. Props., LLC v. Stanley Black & Decker, Inc., No. CV 11-10835-FDS, 2016 WL 335855, at *3 (D. Mass. Jan. 27, 2016) (distinguishing use of certification and interlocutory appeal).

Second, the dismissal of plaintiff's failure-to-train claim similarly offers no grounds for interlocutory appeal because there is no "substantial ground for [a] difference of opinion" as to whether failure-to-train claims, in the abstract, require a pattern of conduct. See 28 U.S.C. § § 1292(b). The United States Supreme Court has made it clear that:

> [A] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference.

Connick, 563 U.S. at 131.

Mazza alleged no such pattern, nor did he assert that his case falls within the "narrow range" of Monell claims that are actionable based solely upon allegations of a single constitutional violation. Id. Accordingly, plaintiff's request is, at most, a challenge to this Court's application of the facts of his case which does not constitute an exceptional circumstance warranting interlocutory appeal. See United Air Lines, Inc. v. Gregory, 716 F. Supp. 2d 79, 91 (D. Mass. 2010) (rejecting request for interlocutory appeal based upon factual, rather than purely legal, dispute). Plaintiff's request will therefore be denied.

### ORDER

For the foregoing reasons, the motion of plaintiff, Anthony Mazza, for reconsideration (Docket No. 28) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated: April 28, 2025